IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:23-CR-426-JEB |
| | ) | |
| PHILLIP CRAWFORD | ) | |

## DEFENDANT PHILLIP CRAWFORD'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE EVIDENCE RELATED TO HIS ARREST

COMES NOW Phillip Crawford ("Mr. Crawford"), pursuant to Rules 401 – 404 of the Federal Rules of Evidence and replies to the government's Response (Doc. 39) to his Motion to exclude evidence relating to his arrest in the Northern District of Georgia on July 12, 2023.

## I.     PRELIMINARY STATEMENT

In a breathtaking effort to wedge a square peg into a round hole, the government argues that Mr. Crawford's decision to linger in his home in the face of armed confrontation with law enforcement in the early morning hours of July 12, 2023 amounts to flight.[1] The events that morning had nothing to do with flight. Perhaps recognizing the absurdity of such a claim, the government quickly pivots

_____

[1] "Evidence of a defendant's flight has long been held to be competent as having a tendency to establish guilt." (Government Response, Doc. 39 at 3).

to "resistance"[2] and then to an argument that he was actively "evading" arrest.[3] After this logical triple jump, the government then concludes that Mr. Crawford's actions and statements that morning, just like flight, show his "consciousness of guilt" (Doc. 39 at 4). This argument fails out of the gate.

The cases cited by the government do not address circumstances even close to what happened here. Mr. Crawford was pinned down, at dawn, in his home, during a school day, at gunpoint, with his family, including three young children. He was not forewarned of an arrest warrant and had no knowledge of it. And, all of this happened 2 ½ years after the events of January 6, 2021. The only thing which his actions demonstrate is that he was petrified and emotional. To twist his protestations of innocence and correctness into a consciousness of guilt stretches relevance to its breaking point. The evidence should not be allowed. It is irrelevant, highly prejudicial, and improper character evidence.

---

[2] "Importantly here, resistance at the time of arrest, like flight, is also probative to consciousness of guilt." (Government Response, Doc. 39 at 3).

[3] "Mr. Crawford's attempt to evade arrest evidences his consciousness of guilt." (Doc. 39 at 4).

II.     **ARGUMENT**

     A.     **This Case Does Not Involve Flight or Consciousness of Guilt from Flight.**

The government attempts to lay a foundation by talking about "flight" jurisprudence to apply it to the circumstances of Mr. Crawford's arrest. However, this case simply does not involve flight or facts which can be analogized to flight such that a permissible inference of consciousness of guilt can safely be drawn. The government's argument fails at its foundation.

The law relating to flight establishes that the government may point to "unprovoked flight" as one of several factors justifying a *Terry* stop. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). However, even when there is actual flight, the Supreme Court has only sanctioned flight as one factor to determine whether a police stop was justified. *Id*. The Court, in *Wardlow*, rejected a *per se* rule that flight establishes even reasonable suspicion of criminal activity. *See id.* at 132-37 (Stevens, J., joined by Ginsburg, Breyer, & Souter, JJ., concurring in part and dissenting in part). In his concurrence, Justice Stevens questioned the "commonsense conclusions" purportedly to be drawn about the motives for flight. *Id*. at 128. Justice Stevens made very clear that even flight caused by police presence can be for wholly innocent reasons. *Id*. at 135-37. It is no wonder then that flight as evidence of wrongdoing is limited to "unprovoked" flight. *See United States v.*

3

*Gordon*, 231 F.3d 750, 757 (11th Cir. 2000) ("The [Supreme] Court made clear that the key question in this context is whether the flight is unprovoked.").

Of course, the police may not provoke the flight and then use it to support an inference of criminal wrongdoing. The police simply cannot create the "ambiguity" that flight behavior represents only to stop a suspect in order to resolve the ambiguity. In a manner of speaking, that is what the government is doing here. The arrest team escalated what could have been a simple arrest at Mr. Crawford's home. He reacted. Undoubtedly, Justice Stevens would look at this case, shake his head, and condemn any "commonsense conclusion" about Mr. Crawford's provoked reaction in his own home. But first, he would likely point out that here, there was <u>no</u> <u>flight</u>, undermining any resort by the government to flight cases as a threshold matter.

With respect to the use of flight evidence at trial, as indicating guilt, the government cites several cases, all involving a defendant's immediate flight from a crime scene or fugitive status. Doc. 39 at 3, citing *Edmonds v. United States*, 273 F.2d 108, 115 (D.C. Cir. 1959) (defendant fled from murder scene); *Funk v. United States*, 16 App. D.C. 478 (1900) (flight hours after homicide, use of fictitious name to book hotel, and purchase of 1000-mile ticket in yet another name was admissible flight evidence); and *United Staes v. Esquivel*, 755 F. Supp. 434 (D.D.C. 1990) (flight

and fugitive after murder indictment handed down). For obvious reasons, these cases are irrelevant and unhelpful here.

Mr. Crawford did not flee from a crime scene. Nor was he a fugitive. Rather, law enforcement triggered an emotional response from Mr. Crawford by laying siege to his home in the early morning hours of July 12, 2023, a full 2 ½ years following January 6, 2021. This is not flight. Nor do flight cases bear any resemblance to these circumstances.

   **B.** **Mr. Crawford's Emotional Response to the Police Presence at His Home in the Early Morning Hours of July 12, 2023 Is Not Admissible "Resistance" Evidence to Show Consciousness of Guilt.**

Without acknowledging the difference, the government quickly pivots from "flight" cases to its conclusion that Mr. Crawford's initial refusal to cooperate amounts to "resistance" or "evasion" which shows a consciousness of guilt. (Doc. 39 at 3-4). Thus, according to the government, Mr. Crawford's reaction is relevant to what happened 2 ½ years earlier. This too is wrong.

The government initially cites a 1968 case from this circuit, *Calloway v. United States*, 399 F.2d 1006 (D.C. Cir. 1968) for the proposition that resisting arrest may allow a permissible inference of guilt. (Doc. 39 at 3). *Calloway*, however, is a one-page opinion with little factual development about the arrest or "resistance." What is clear from *Calloway* is the Court's explanation that any inference to be drawn from resistance must depend upon the facts of the case. *Id*. at n. 4. There,

the Court noted that the defendant immediately fled from a murder scene and ran down the street. *Id.* at n. 1. The Court determined that the ensuing warrantless arrest of Calloway was justified and ultimately, that the jury charge on resistance was not prejudicial. *Calloway*, however, is unhelpful.[4]

Next, the government cites this Court's decision in *United States v. Bennett*, 2023 WL 6460026 (D.D.C., Oct. 4, 2023). (Doc. 39 at 3-4). Again, the facts of *Bennett* stand in sharp contrast to what we have here.

In *Bennett*, the Court addressed the defendant's motion to exclude evidence concerning the circumstances of his voluntary surrender to law enforcement. *Id.* at * 6. There, as here, the government argued that the defendant took "steps to evade arrest" thereby showing his "consciousness of guilt." *Id.* (quoting Government brief). The facts of *Bennett* are significantly different than here. In *Bennett*, as the Court pointed out, there was a 12-day lapse between when Bennett learned of the arrest warrant and his voluntary surrender. *Id.* at * 6. The Court also cited a recorded FBI statement made by Bennett after he knew of a co-defendant's arrest where he admitted that the FBI was "probably looking for him" and that he was "laying low." *Id.* The government also pointed out that Bennett threw his phone out prior to surrender, demonstrating destruction of evidence. *Id.*

---

[4] Counsel could not find a single case citing *Calloway* for its statement about resisting arrest.

6

Based upon these facts, the Court denied Bennett's motion in limine but reserved final judgment, finding a potential factual predicate for the inference of a guilty mind. However, even on those facts, the Court took a measured approach and noted that it would consider any renewed objection on the evidence actually presented at trial. *Id.* at * 6.

In this case, Mr. Crawford was not aware of an arrest warrant. He was not aware that law enforcement was looking for him. And, he did not take any affirmative steps to "lay low." Nor did he hide or destroy any potential evidence. He was not a fugitive. Rather, Mr. Crawford was living at the same residence where FBI agents visited him on March 4, 2021 to discuss the events of January 6, 2021. At no point in the intervening 2 ½ years was Mr. Crawford ever told there was a warrant. Mr. Crawford was going about his life, working, and providing for his wife and three school-aged kids. No effort was made to allow him to self-surrender. Nor did law enforcement simply come to the residence and execute the warrant. They pulled up to his home in force with a bullhorn and firearms trained on the front door.

The government immediately jumps to Mr. Crawford's statements that morning about January 6 as constituting a factual predicate for a guilty mind because he was "aware of the charges he was resisting." (Doc. 39 at 4-5). Contrary to the government's argument, Mr. Crawford's belief about why law enforcement

was at his house does not magically transform into consciousness of guilt. Again, the FBI came to his house, without incident, on March 4, 2021. Mr. Crawford is a family man with little-to-no contact with law enforcement. His knowledge of why they were there on July 12, 2023 is hardly surprising, much less insight into his guilty mind.

The government's argument skips a vital step. There *first* must be some sort of *unprompted* flight or active evasion to demonstrate an inference of guilt of the crime charged. Only then does the Court concern itself with whether a defendant's *unprompted* flight relates to the crime charged or some other, unrelated, innocent explanation. In that situation, his awareness of the charge becomes important. The government wrongly concludes that, because Mr. Crawford knew they were there because of January 6, that is enough for an inference of guilt. That is incorrect.

Moreover, a look at his reaction and statements that day do not, as the government argues, represent "direct admissions to the charged offenses themselves." (Doc. 39 at 4). As an initial matter, whether or not something amounts to a non-hearsay statement, Fed. R. Evid. 801(d)(2), does not make it relevant, Fed. R. Evid. 401-403. That said, Mr. Crawford's statements are far from an admission *to the charges*. Rather, the vast majority of his statements relate to his skepticism about the system and faith that he will get a fair shake in Washington. (Doc. 39 at 4). To the extent Mr. Crawford made admissible statements about what he

personally witnessed in Washington, those can certainly be introduced without the need to go into the circumstances of his arrest that are irrelevant, inflammatory, and prejudicial. Fed. R. Evid. 403.

### C.    The Government's Proposed Evidence Amounts to Improper Character Evidence and Otherwise Should Be Excluded Under Rule 403.

To the extent Mr. Crawford said things in the heat of passion which might be construed as threatening or insulting to law enforcement (Doc. 39 at 2-3),[5] that, by definition, is improper character evidence involving other wrongs or acts. Fed. R. Evid. 404(a)(1). There is no place at trial for that unless the government demonstrates an exception and provides notice under Rule 404(b).

The government attempts to recast the argument by claiming that it would just be offering evidence of flight, not other wrongs. (Doc. 39 at 5). In support, it cites *United States v. Morrow*, 2004 WL 3159572 (D.D.C, April 7, 2005), where the Court allowed evidence that a defendant was apprehended after a high-speed chase and ramming of police cars. *Id.* at * 28. Police found a gun in the car. The defendant was a felon. Understandably, the Court held that the evidence of defendant's headlong flight was admissible as extrinsic evidence of a consciousness of guilt. *Id.* After all, he was in constructive possession of a firearm,

---

[5] The government points to Mr. Crawford calling agents "traitors" and statement, "I will beat your ass with these handcuffs! Pussy!" (Doc. 39 at 2-3).

as a felon, which was a count in the indictment. Moreover, the arrest and flight, as pointed out by the Court, occurred within the relevant conspiracy period charged in the indictment.[6] *Id.* This was not extrinsic character evidence.[7] *Morrow* does not support the government's position.

Here, by contrast, there is no conspiracy charged. There was no flight. And, the arrest of Mr. Crawford occurred 2 ½ years after January 6, 2021. Clearly, any behavior by Mr. Crawford on July 12, 2023 is not intrinsic to the charges contained in his Superseding Indictment. Moreover, the conduct which the government proposes to introduce - - insults, threats, and the like - - after he surrendered to authorities, was while he was in custody, and is clearly evidence of other wrongs which has no bearing on the case.

The government reassures the Court that it will not claim that Mr. Crawford's reaction and statements amount to "misconduct" but rather merely evidence of his consciousness of guilt. (Doc. 39 at 6). This argument is thinly veiled and betrayed by the government's statement (in support of revoking his bond)

---

[6] The case charged a large RICO conspiracy.

[7] In his motion, Mr. Crawford cites *United States v. Wright*, 392 F.3d 1269 (11th Cir. 2004) (admitting evidence of resisting arrest prior to locating an unlawfully possessed firearm in the defendant's car) for the same point. (Doc. 33 at 8). That is, resistance evidence is admitted when it is intrinsic – necessary to tell the full story of the charged conduct. We do not have that here. We certainly do not have the flight involved in *Morrow*. The government's attempt to use *Morrow* and reconcile *Wright* fails. (See Doc. 39 at 5-6).

that Mr. Crawford's conduct during his arrest demonstrates "that he does not have respect for the law." (Doc. 14 at 7). That is character evidence regardless of whether it is characterized as threatening the police, resisting arrest, or disrespecting the law. Moreover, the impression which the government's evidence creates (whether expressly argued or not) cannot be remedied with a limiting instruction. It is simply too prejudicial under Rule 403, especially when there is <u>no</u> probative value to it 2 ½ years later. This case should rise or fall based upon what happened on January 6, 2021, not July 12, 20<u>23</u>.

Preventing the government from dragging inflammatory video and testimonial evidence concerning his arrest before the jury 2 ½ years after the charged offenses, does not cut off the government's ability to offer admissible evidence about Mr. Crawford's *relevant* statements during his arrest. In particular, the government makes a meal of Mr. Crawford's statements, such as, "I'm the one in the right" or "I'm the only person in the right here." In addition, the government highlights Mr. Crawford's claim to have watched law enforcement "murder a girl" and "beat her in the face for 15 minutes." (Doc. 39 at 2). It also points to his reference to "Everything I did that day," which statement was not completed by Mr. Crawford. (Doc. 39 at 3). As is the customary practice, a case agent can certainly testify to these statements, without the need to parade impermissible character evidence in front of the jury.

To be clear, however, none of these statements is necessary to prove that Mr. Crawford was present at the Capitol on January 6. (Doc. 39 at 7). He has not challenged this. Moreover, there is video evidence from the actual day which will certainly be offered in evidence. And, contrary to the government's conclusion, these statements do not prove that he was "assaultive" at the Capitol. (Doc. 39 at 7). If deemed admissible, the government would be free to argue the meaning of Mr. Crawford's statements. However, it should not be given free license to present extrinsic, irrelevant character evidence under the guise of flight. Under the facts of this case, the inference of guilt which the government asks the Court to permit, based upon Mr. Crawford merely remaining in his home, is beyond what the law allows.

### III.    CONCLUSION

Mr. Crawford respectfully requests that the Court exclude all evidence related to his arrest on July 12, 2023.

Respectfully submitted on this 8th day of April 2024.

> */s/ Thomas L. Hawker*
> THOMAS L. HAWKER
> Georgia Bar No. 338670
> Attorney for Phillip Crawford

Federal Defender Program, Inc.
101 Marietta Street, N.W., Suite 1500
Atlanta, Georgia 30303
(404)688-7530
Thomas_Hawker@fd.org