UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 23-CR-426 (JEB) |
| | : | |
| v. | : | |
| | : | |
| PHILLIP CRAWFORD, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S POST-TRIAL BRIEF**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this post-trial brief addressing the three issues raised by the Court at the conclusion of the bench trial in this case, but before the verdict is rendered as to Count Six: 1) whether Crawford's acts "involve physical contact" with the officer victim of the assault charged in Count Six, in violation of 18 U.S.C. § 111(a); 2) whether 18 U.S.C. § 231 can serve as the "other felony" the defendant intended to commit for purposes of a felony 18 U.S.C. § 111(a) conviction; and 3) whether the defendant must be physically present for the Court's verdict on the remaining charge of 18 U.S.C. § 111(a). The answer to all three questions is yes.

**Discussion**

In Count Six, the defendant is charged with assaulting a federal officer using a deadly and dangerous weapon (a gas mask), where the acts involved physical contact with the victim officer and the intent to commit another felony (obstructing officers during a civil disorder). ECF No. 34 at 4. The Court has ruled that the gas mask the defendant used in his assault does not meet the applicable definition of a deadly and dangerous weapon. Therefore, to make out a felony violation of Section 111(a), the Court must find either that the defendant's acts involved physical

1

contact with the victim or the intent to commit another felony (or both).  Both the facts and the law militate in favor of felony conviction for both reasons.

## I.       The Defendant's Acts Involved Physical Contact as Contemplated by the Statute

The evidence at trial proves beyond a reasonable doubt that the defendant made physical contact as contemplated under 18 U.S.C. § 111(a) when he threw the gas mask at the victim officer, and should therefore be found guilty of the lesser felony offense charged in Count Six. Government's exhibits 503A, 505A, and 514 best show the footage of the act at issue. At approximately 4:13:30 pm, the defendant threw a fallen police gas mask at the line of uniformed officers. He used a double-handed overhead throw and was standing just feet in front of the officers. The impact of the mask is audible on the body worn camera footage.

First, the evidence supports a finding that the gas mask impacted Metropolitan Police Department Officer C.W. directly before it tumbled down the front of his shield and fell to the ground. Watching Government's Exhibit 503A at 4:13:30 p.m., the sound of the mask's impact occurs slightly *before* the mask is seen tumbling down the shield itself, providing circumstantial evidence that the mask's initial impact was with Officer C.W. himself.



*Still of Mask Tumbling Down Officer's Shield from Government's Exhibit 503(A) at 4:13:30 p.m.*

However, even if the Court finds that the mask made first impact when it hit the officer's shield, the defendant's acts still involved physical contact with the victim because contact between an object wielded by the defendant and an object connected to the victim is an act "involving physical contact" under the plain meaning of the law and as a matter of Congressional intent.

### a. Under 18 U.S.C. § 111(a), Like in a Battery, Physical Contact Includes Contact Between an Object Wielded by the Defendant and an Object Intimately Connected With the Victim's Body

Section 111's statutory structure indicates that an act "involving physical contact" does not require direct, person-to-person contact. By separating "acts… [that] constitute only simple assault" from those that "involve physical contact with the victim of that assault," Congress mirrored the common law distinction between assault and battery: "Under the common law, physical contact is the line of demarcation between simple assault and battery." *United States v. Vallery*, 437 F.3d 626, 631 (7th Cir. 2006); *see also United States v. Acosta-Sierra*, 690 F.3d 1111, 1117 (9th Cir. 2012) (explaining that, "[b]ecause Section 111 does not define assault, we have adopted the common law definition of assault" and noting that simple assault does not require physical contact); *United States v. Davis*, 690 F.3d 127, 135 (2d Cir. 2012) ("'simple assault' retains its common law definition in the context of the current version of Section 111(a)"); *United States v. Lehi*, 446 F. App'x 96, 100 (10th Cir. 2011) (explaining that Section 111's "plain language clearly provides that simple assaults involving physical contact (*i.e.*, completed batteries) are felonies").

For a "completed battery" assault (contrasted with a "simple" assault), however, "[t]he requirements of 'touching' or 'personal contact' are not limited to instances of direct person-to-person contact." W Wayne R. LaFave, Substantive Criminal Law § 16.2(a) (3d ed. Oct. 2023).

For instance, it is black-letter law that causing an offensive touching, even indirectly to another's clothing and not resulting in injury, is the tort of battery. *Pena v. Greffet,* 108 F. Supp. 3d 1030, 1049 (D.N.M. 2015); *see also Livingston v. Marion Bank and Trust Co.,* 30 F.Supp.3d 1285, 1323 (N.D. Ala. 2015) ("Battery also encompasses the rude or offensive touching of another person's clothing" (citing cases)).

Numerous cases have held that a person commits a battery without direct physical contact. *See, e.g.*, *United States v. Stoddard,* 407 F. Appx. 231, 233 (9th Cir. 2011) ("Stoddard nonetheless argues that spitting does not rise to the level of a felony assault involving physical contact because it does not involve body-to-body touching. However, the plain statutory text does not require such contact; it merely requires 'physical contact.'"); *United States v. Taliaferro*, 211 F.3d 412, 415 (7th Cir. 2000) ("While battery is defined as 'intentional and wrongful physical contact with a person,' *see* Black's Law Dictionary 152 (6th ed. 1990), it is clear that the contact between the aggressor and the victim need not be direct, but rather can result from the 'indirect application of force … by some substance or agency placed in motion by' the aggressor."); *State v. Conner*, No. 124, 576, 2023 WL 2618707 (Kan. Ct. App. Mar. 24, 2023) ("this court has upheld aggravated battery convictions based on physical contact caused by hitting the victim's car with the defendant's car"); *In re Jeremiah T.*, 126 P.3d 177, 180 (Ariz. Ct. App. 2006) ("'Touching' for purposes of § 13-1203(A)(3) does not require direct, person-to-person physical contact. It is sufficient if the defendant sets in motion a force or process that produces some sort of contact with the victim…  Examples… include throwing urine from a container onto a person, spitting on someone, poisoning food that the victim ingests, transmitting a disease, or placing caustic chemicals on a surface touched by the victim."); *State v. Dawson*, 985 S.W.2d 941, 952 (Miss. Ct. App. 1999) ("treatises indicate that the physical contact element

of an assault or battery could be satisfied through either direct or indirect touching.") (citations omitted); Report & Recommendation, *Baldwin v. Jones*, No. 15-CV-18, (N.D. Fla. Aug. 22, 2016), ECF No. 23 at 34 (finding, on habeas review of a Florida aggravated battery conviction where the defendant shot the victim with a firearm, "[t]he Defendant's assertion that the State must prove that he physically touched the victim with his hands or otherwise directly struck the victim with the firearm is not a correct statement of law… There is nothing in the statute that requires direct person to person contact") (citing *Clark v. State*, 783 So. 2d 967 (Fla. 2001) (evidence that the defendant intentionally collided with another occupied vehicle was sufficient to create a jury question regarding aggravated battery with a deadly weapon); *Nash v. State*, 766 So. 2d 310 (Fla. 4th DCA 2000) (touching the victim's purse without making contact with her person was a battery).).

As the District of Maryland explained in *Eichenwald v. Rivello* (describing Texas battery law), "the physical contact need not be with the physical body of the plaintiff…and it need not be direct physical contact[.]" That is, "in order for a battery to occur, there must be some physical contact between something and the plaintiff or something attached to the plaintiff." *Eichenwald v. Rivello*, 318 F. Supp. 3d 766, 773-74 (D. Md. 2018) (citing *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 629 (Tex. 1967) (grabbing a person's plate in buffet line constituted a battery); *Hutchison v. Brookshire Bros.*, Ltd., 284 F. Supp. 2d 459, 475 (E.D. Tex. 2003) ("For Defendant to cause Plaintiff to be touched does not require that Defendant himself actually touch Plaintiff."); W. Prosser, Law of Torts § 9 n.16 (citing examples such as "operating car so as to throw plaintiff from running board").

Battery includes the actual and intentional touching of another person *or* an object intimately connected to that person against that person's will. *Hatmaker v. Liberty Mut. Fire Ins.*

*Co.,* 308 F. Supp. 2d 1308, 1317 (M.D. Fla., 2004). To that end, there is ample case law holding

that battery encompasses touching an object that a person is holding. *See, e.g.*, *United States v.*

*Pruitt*, 999 F.3d 1017, 1029 (6th Cir. 2021) (Nalbandian, J., concurring) ("Trying to grab a gun

is a battery even if Pruitt did not touch the officer in the process."); *id.* at 1029 n.15 ("Civil

battery cases also support the idea that items held in the hand are part of the victim's body for

battery purposes."); *Nash*, 766 So. 2d at 310 ("Battery is the actual and intentional touching of

another person against that person's will, § 784.03(1)(a), Fla. Stat. (1997), but the word 'person'

in the statute includes an object that has such an intimate connection with the person as to be

regarded as a part or extension of the person, such as clothing or an object held by the person.");

*Kidwell v. Sheets, Inc.,* 982 F. Supp. 1177, 1185 (W.D.W. Va, 1997) ("The 'slightest touching of

another, or of his clothes, cane, or anything else attached to his person, if done in a rude, insolent

or angry manner,' may be actionable as the tort of assault and battery under Virginia state law"

(citing cases)); *Malczewski v. State*, 444 So. 2d 1096, 1098 (Fla. Ct. App. 1984) ("contact with

the plaintiff's clothing, or with a cane, a paper, or any other object held in his hand, will be

sufficient… His interest in the integrity of his person includes all those things which are in

contact or connected with it") (quoting W. Prosser, Law of Torts § 9 at 34 (4th ed. 1971));

*Reynolds v. MacFarlane*, 322 P.3d 755, 759 (Utah Ct. App. 2014) (same); *In re B.L.*, 239 Cal.

App. 4th 1491, 1496 (Cal. Ct. App. 2015) (same); *State v. Ortega*, 827 P.2d 152, 156 (N.M. Ct.

App. 1991) ("We reject Defendant's literal reading of the statute and hold that the word 'person'

as used in New Mexico's battery upon a peace officer statute includes anything intimately

connected with person. Accordingly, the flashlight which Officer Adams carried was part of

Officer Adams' 'person'"); *Stokes v. State*, 115 N.E.2d 442, 443 (Ind. 1953) (where defendant

fired gun, bullet perforated victim's necktie and creased victim's shirt, defendant's action

constituted battery); *Morgan v. Loyacomo*, 1 So.2d 510, 511 (Miss. 1941) (defendant's action of forcibly seizing package from under customer's arm constituted battery).

In other January 6 cases, other Judges from this district have held that – for purposes of a felony violation of 18 U.S.C. § 111(a) – "physical contact with the victim" does not require direct contact with the victim's body. In *United States v. Ryan Samsel*, *et al.*, 21-CR-537 (JMC) (D.D.C. February 9, 2024) (Hon. Jia M. Cobb) ECF No. 345 (Findings of Fact and Conclusions of Law), a defendant "attempted to rip a riot shield out of a USCP officer's hands while other rioters were yelling at and shoving police officers." *Samsel* ECF No. 345 p. 12. In *Samsel*, count twelve—alleging a violation of 18 U.S.C. § 111(a)—covered that event. Judge Cobb reasoned, "Mr. Samsel was not successful in taking the shield, but managed to pull the shield down and expose the officer's face and torso to the crowd." *Id*. at 45. Judge Cobb continued, "the Court finds that Mr. Samsel's conduct involved physical contact with the officer and the intent to commit another felony." *Id*.

In *United States v. Matthew DaSilva*, 21-CR-564 (CJN) (D.D.C. July 19, 2023) (Hon. Carl J. Nichols), a defendant was charged with a violation of 18 U.S.C. § 111(a) during a violent push at the Lower West Terrace entrance. The court specifically stated that, "Actual physical contact with the officer is not required, but some measure of presently applied force is required." Transcript of Bench Trial – Day 3, p. 16 ln. 7-9, *United States v. Matthew DaSilva*, 21-CR-564 (CJN) (D.D.C. July 19, 2023). The court found, "Body cam footage shows DaSilva bending his knees, lowering his head and using his full body and body weight to push against and grab a riot shield. Officer [S.] struggled to hang on, given the amount of force DaSilva applied." *Id.* at 17 ln. 1. The court continued, "I find beyond a reasonable doubt that DaSilva made physical contact with Officer [S.] during the assault. For the duration of the assault, DaSilva's hands were on a

riot shield held by Officer [S.] and DaSilva made direct contact with Officer [S.]'s hand when he tried to block his use of OC spray." *Id*. at 18 ln. 15. While the direct contact with the officer's hand makes *DaSilva* factually distinct from this case, the mention of DaSilva's contact with the riot shield indicates that the court there also considered that act as involving physical contact.

In *United States v. Samuel Camargo,* No. 21-CR-70 (ABJ), Judge Berman Jackson noted that "numerous courts have previously found spitting to be sufficiently offensive physical contact to fall within the scope of section 111" in denying defense's request to dismiss a charge of 18 U.S.C. § 111(a) where a defendant spat at an officer. ECF No. 114 at 6 (citing cases).

Similarly, this Court should find that the "physical contact" prong of 18 U.S.C. § 111(a) is satisfied in this case by the gas mask thrown by the defendant hitting the officer's shield. As illustrated in the image below from Government's Exhibit 503(A), Officer C.W. had the shield propped up against his lower body to protect himself at the time Crawford threw the mask.



*Still of Shield Propped Against Officer C.W.'s Lower Body*
*from Government's Exhibit 503(A) at 4:13:30 p.m., Just Before Mask's Impact*

Just like the shields in *Samsel* and *DaSilva*, here the shield used by Officer C.W. was an extension of his person; he held it up against his body specifically to use it as a piece of protective equipment that was intimately connected to him. *See Samsel*, *et al.*, 21-CR-537 (JMC), ECF No. 345; Transcript of Bench Trial – Day 3, *DaSilva*, 21-CR-564 (CJN). As such, even if the court finds that Crawford's actions here did not entail direct person to person contact with Officer C.W., they nonetheless "involved physical contact" with the officer as contemplated in a completed battery assault like 18 U.S.C. § 111(a).

### b.   Any Contrary Interpretation Would Undermine Congressional Intent

Furthermore, reading Section 111's "physical contact" element to require direct, person-to-person contact would undermine Congress's intent "of according maximum protection to federal officers[.]" *United States v. Feola*, 420 U.S. 671, 684 (1975); *Cf. United States v. Walker*, 835 F.2d 983, 987 (2nd Cir. 1987) ("In order to protect the law enforcement function itself, the statute must be read as prohibiting any acts or threats of bodily harm that might reasonably deter a federal official from the performance of his or her duties."). Such a goal would be frustrated if an individual could escape criminal liability merely because the federal officer chose to equip himself with a shield. It would not provide federal officers with maximum protection to allow a person to throw objects at police officers' helmets or shields subject only to misdemeanor prosecution under 18 U.S.C. § 111(a)'s "simple assault" provision.

That interpretation would also lead to anomalous results. *See generally Validus Reinsurance, Ltd. v. United States*, 786 F.3d 1039, 1045-46 (D.C. Cir. 2015) ("Just as courts are obligated to avoid construing statutes to create superfluities when possible, so too must they avoid statutory interpretations that bring about an anomalous result when other interpretations are available.") (quotation marks omitted). If hitting an officer in the shield with an object does

not constitute "physical contact," then relatively innocuous acts—such as poking an officer in the chest, pushing an officer to the side, or intentionally jostling an officer—would be punished more severely than dangerous acts, such as hitting an officer in the shield with a stick or a pole. This cannot be what Congress intended in enacting 18 U.S.C. § 111(a).

Here, the defendant threw an object, a gas mask, which collided with—at a minimum—an officer's protective gear while he was holding it up with his body and using it to protect himself and other officers in the middle of a violent standoff. The defendant's actions meet the common law definition of battery and satisfy "physical contact" as contemplated in 18 U.S.C. § 111(a). Consistent with the statutory structure, case law, and Congress's intent to provide federal officers with maximum protection in the course of their work, the Court should find that the defendant's forcefully throwing the gas mask directly at Officer C.W., hitting – at a minimum – his shield he was using to protect himself, satisfies the element that Crawford's acts "involved physical contact" with the officer.  The Court should convict the defendant of felony 18 U.S.C. § 111(a) under the "physical contact" prong.

## II.     Civil Disorder Under 18 U.S.C. § 231 Can Serve as the Predicate Felony for a Felony Conviction Under 18 U.S.C. § 111(a)

The intent to violate 18 U.S.C. § 231 can be the "intent to commit another felony" for a conviction of felony 18 U.S.C. § 111(a). Just last week, in *United States v. Tristan Stevens,* No. 23-3046 (D.C. Cir. June 28, 2024), the D.C. Circuit Court of Appeals upheld the use of U.S.S.G. § 2A2.2 in a January 6 case where "the court concluded that [the defendant] committed the Section 111(a)(1) offense with an intent to commit another felony: Section 231(a)(3) civil disorder." *Id.* at 2. There, the court specifically determined that Section 231(a)(3) civil disorder

constituted "another felony" separate from the Section 111(a)(1) count. *Id.* at 14-15.[1] While *Stevens* specifically analyzed this issue in the context of whether to apply the aggravated assault sentencing guideline, the sentencing guidelines analysis and statutory analysis are identical in this context.

To that end, numerous January 6 cases have specifically allowed that a defendant's assault in violation of Section 111(a) is felonious where it is committed with the intent to interfere with officers during a civil disorder. *See United States v. Samuel Camargo,* No. 21-CR-70 (ABJ), ECF No. 114 at 11-12 ("A defendant's intention to commit a violation of section 231 can make a violation of section 111(a)(1) punishable as a felony precisely under these circumstances."); *United States v. Bingert,* No: 1:21-CR-91-1-RCL, 2023 WL 3613237, at *3 (D.D.C. May 24, 2023) (considering 18 U.S.C. § 231(a)(3) an appropriate '[]other felony' for the purpose of § 111(a)(1) felony prosecution); *United States v. Sargent,* No. 21-CR-00258 (TFH), 2022 WL 11248178, at *8 (D.D.C. Apr. 14, 2022) (same).

Additionally, in accepting plea agreements and issuing jury instructions in numerous other January 6 cases, courts in this district have found that the Section 231 felony may be the

---

[1] Consistent with *Stevens,* examples abound of January 6 cases where courts in this district have sentenced the defendant for an aggravated assault (in violation of 18 U.S.C. § 111(a)(1)) where the aggravated assault Guidelines (§ 2A2.2) applied only because the defendant intended to commit another felony in the form of 18 U.S.C. § 231(a)(3). In all of them, the sentencing court concurred—explicitly or implicitly—with the parties' agreement that Section 231(a)(3) (civil disorder) *can* properly serve as the "other felony" motivating an assault and thus qualifying a violation of Section 111(a)(1) as an "aggravated assault" under U.S.S.G. § 2A2.2. *See, e.g., United States v. Sargent,* No. 21-CR-258 (TFH); *United States v. Creek*, No. 21-CR-645 (DLF); *United States v. Council*, No. 21-CR-207 (TNM); *United States v. Leffingwell*, No. 21-CR-5 (ABJ); *United States v. Dickinson*, No. 21-CR-649 (JDB); *United States v. Shively*, No. 21-CR-151 (CKK); *United States v. Owens*, No. 21-CR-286 (BAH); *United States v. Eckerman*, No. 21-CR-623 (CRC); *United States v. Clayton*, No. 22-CR-139 (RCL). Other courts have reached the same conclusion post-trial. *See, e.g., United States v. Dennis*, No. 21-CR-679 (JEB); *United States v. Gillespie*, No. 22-CR-60 (BAH); *United States v. Pollack, et al.*, No. 21-CR-447 (CJN).

"other felony" supporting a felony conviction under Section 111(a). *See, e.g.,* Final Jury Instructions, *United States v. Williams,* No. 21-CR-618 (ABJ), ECF No. 122, at 32 (D.D.C. Nov. 16, 2022); Final Jury Instructions, *United States v. Schwartz,* No. 21-CR-178 (APM), ECF No. 172 at 14; Plea Agreement and Statement of Offense, *United States v. McNamara,* No. 23-CR-119 (ABJ), ECF Nos. 31-32; *see also* Bench Trial Verdict, *United States v. McCaughey,* et al., No 21-CR-40 (TNM), ECF No. 638 at 13:18-24; 28:6-11.

Neither the *actus reas* nor the *mens rea* for Sections 231 and 111 are the same. A defendant's conduct in assaulting one particular officer is distinct and narrower than his broader conduct in contributing to an ongoing civil disorder.

However, even if the court somehow determines that the *actus reus* for the two crimes at issue here is the same, the *mens rea*—the intent—is not, and that distinction is crucial. A conviction under § 111(a)(1) requires proof that the defendant intentionally assaulted, resisted, opposed, impeded, intimidated, or interfered with a federal officer engaged in his or her official duties. That is the limit of § 111(a)(1)'s *mens rea* requirement. The statute is broad; a defendant can violate § 111(a)(1) by striking any federal officer, in any situation, for any purpose, including for no purpose at all. By contrast, a violation of 18 U.S.C. § 231(a)(3) requires a specific situation to be present (an ongoing civil disorder), a particular type of federal officer victim (one engaged in official duties in response to that civil disorder), and a specific intent behind the defendant's conduct (the intent to obstruct, impede, or interfere with the officer's efforts to deal with the civil disorder). A random act of violence against a federal police officer who is just walking down the street violates § 111(a)(1) but not § 231(a)(3).

Section 111 elevates assaults that are committed for a felonious *purpose beyond the assault itself*, such as to impede that same federal officer from responding to a civil disorder.

12

Indeed, distinguishing crimes—even those involving the same *conduct*—based on the intent behind that conduct is commonplace in our legal system. For example, although both involuntary manslaughter and premeditated murder are unlawful homicides resulting in the loss of a human life, premeditated murder involves the *intent* to kill while involuntary manslaughter does not. Accordingly, federal criminal law and the law of every state punishes premeditated murder more harshly than involuntary manslaughter, not because the defendant's conduct resulted in someone's death, but because of the defendant's *intent* to cause that result. *Compare* 18 U.S.C. § 1111(b) (mandatory penalty for first degree murder is death or imprisonment for life) *with* 18 U.S.C. § 1112(b) (maximum prison sentence for involuntary manslaughter is 8 years).

The same distinction can be found among January 6 defendants. For example, Judge Berman Jackson further explained this position in *United States v. Samuel Camargo,* No. 21-CR-70 (ABJ), specifically holding:

> While both the civil disorder charge in Count 1 and the section 111 charge in Count 2 are based on the same factual predicate, that does not mean Count 1 cannot serve as the "[]other felony" for purposes of enhancing the penalty for the assault under section 111(a)… In sum, absent any indication to the contrary, the phrase "another felony" must be accorded its plain meaning, as long as it is consistent with constitutional imperatives. Therefore, a violation of 18 U.S.C. § 231(a)(3) can serve as "another felony" for purposes of section 111(a)(1).

ECF No. 114 at 9-12.

Here, Crawford's *actus reas* in throwing the gas mask at Officer C.W. was different and significantly more limited than his broader conduct as alleged in the superseding indictment and the bill of particulars, or admitted in the sworn statement of offense that Crawford entered when he pled guilty to several counts of 18 U.S.C. § 111(a) and to Civil Disorder itself, in violation of 18 U.S.C. § 231(a)(3).

The bill of particulars cites the following factual basis for Count Six, then alleged as a violation of 18 U.S.C. § 111(b)(1)(A) (and 18 U.S.C. § 1752(a)(4)):

> The government intends to argue that the defendant's two-handed throw of a gas mask serves as the basis for the violation of this statute. At approximately 4:13 p.m. on January 6, 2021, the defendant threw a gas mask at a line of officers. At approximately 4:13:30 p.m., the mask struck an officer with the Metropolitan Police Department—Officer C.W.—and the defendant threw the mask with the intent to commit a violation of 18 U.S.C. § 231(a)(3).

ECF 27 at 4.

On the other hand, the bill of particulars cites the following substantially broader factual basis with respect to Count One, alleging a violation of 18 U.S.C. § 231(a)(3):

> The specific conduct at issue, which is alleged to have occurred between 2:00 p.m. and 4:00 p.m. on the grounds of the United States Capitol, involves the defendant engaged in forcibly assaulting officers, joining fellow rioters in pushing into the Capitol, and encouraging others to join in assaultive conduct.

ECF 27 at 2.

Crawford pled guilty to committing Civil Disorder under 18 U.S.C. § 231(a)(3). Specifically, his statement of offense stated that "[b]etween approximately 4:10:42 p.m. and 4:13:38 [p.m.], Mr. Crawford committed acts to obstruct, impede, or interfere with a law enforcement officer performing his official duties." ECF 52 at 2. This time period encompasses his throwing the gas mask at the police line at 4:13:30 p.m. as alleged in Count Six. However, it also encompasses all of his other assaults on officers, the assault of a civilian, and his attempts to aid other rioters who were assaulting officers and attempting to gain entry to the Capitol during that time. The defendant's "Stop the Steal" shirt, his earlier rally cry ("We're going to charge in that motherfucker… I don't give a shit how many there is!"), and his violent actions at the mouth of the tunnel all provide evidence beyond a reasonable doubt of his intent that day—which included his intent to obstruct police officers during a civil disorder.

14

The Court should find that the evidence, including the defendant's guilty plea to Count One, satisfies the element that Crawford's acts involved "the intent to commit" the felony of Civil Disorder.  The Court should convict the defendant of felony 18 U.S.C. § 111(a) under the "intent to commit another felony" prong.

### III.    Federal Rule of Criminal Procedure 43 Requires the Defendant's In-Person Appearance for the Verdict

Rule 43 requires that a defendant "must be present"[2] at "every stage of the trial, including… the return of the verdict." Fed. R. Crim. P. R 43(a)(2). Rule 43's requirement that a defendant be present at all stages of trial has been in place since the inception of the Federal Rules of Criminal Procedure, *see* Advisory Comm. Notes, 1944 Adoption, Paragraph 1, and has been a foundational requirement in criminal procedure long before the rules were promogulated. *Diaz v. United States*, 223 U.S. 442, 456 (1912) (it is the right of the defendant, and in the interest of the government, that in felony cases, the defendant shall be "present at all stages of the trial – especially at the rendition of the verdict").

Indeed, courts have long and uniformly recognized the importance of a defendant's in-person appearance at all stages of the criminal proceedings: "the significance of a defendant being physically present for a proceeding . . . cannot be understated." *United States v. Shaver*, Case No. 6:18-cr-00033-GFVT-HAI, 2023 WL 6961552, at *2 (E.D. Ky., Oct. 20, 2023) (denying request by defendant to appear via video conference for a sentencing). Courts have recognized the importance of this rule specifically as it relates to the verdict portion of the trial.

---

[2] Overwhelming authority dictates that the meaning of "present" follows the plain, common-sense, dictionary definition as "physical existence in the same place as whatever act is done there." *United States v. Burke*, 345 F.3d 416, 421 n.2 (6th Cir. 2003) (citing cases).

As one court explained, the reading of the verdict is "perhaps the most critical" stage of the trial from the defendant's perspective. *United States v. Canady*, 126 F.3d 352, 360 (2d Cir. 1997).

This is no less true following a bench trial. *Id.* at 361-362 ("We see no reason why a defendant's presence is less critical when the court, instead of the jury, renders its decision as to the ultimate issue of whether the defendant is guilty or innocent."). As the Second Circuit explained in the context of a bench trial verdict, "there is a distinctly useful purpose in ensuring that the pronouncement of the defendant's guilt or innocence by the court is both face-to-face and public. It assures that the trial court is 'keenly alive to a sense of [its] responsibility and to the importance of [its] function.'" *Id.* at 361 (quoting *Walker v. Georgia*, 467 U.S. 39, 46 (1984)).

Rule 43 provides that a defendant's presence is not required in prosecution for a misdemeanor offense. Fed. R. Crim. P. 43(b)(2). Consistent with well-established and long-standing precedent, the Rules Committee thus recognized the distinction between misdemeanor and felony cases and drew a line differentiating between the two. Here, the lesser offense of Count X alleges a felony violation of 18 U.S.C. §111(a). Accordingly, the defendant is subject to the rules that apply to felony defendants. *See Valenzuela-Gonzalez v. U.S. Dist. Ct. for Dist. of AZ*, 915 F.2d 1276 (9th Cir. 1990) (holding that arraignment by closed circuit television does not constitute substantial compliance with Rule 43 where the request was made for convenience – rather than necessity).

Rule 43(c)(1) does outline certain exceptions to the requirement that the defendant appear in person, including where a defendant was initially present at trial but then "is voluntarily absent after the trial has begun[.]" Fed. R. Crim. P. 43(c)(1)(A).  This does not allow for a defendant's absence at a critical stage of a criminal proceeding simply as a matter of convenience.  That is,

Rule 43(c)(1)'s exceptions do not provide a mechanism for a defendant "to waive her presence for ease or preference" – rather, the rule sets forth mechanisms for "continuing trial and sentencing after a culpable act of the defendant [that] would have otherwise jeopardized case progression," such as when a defendant flees, *see generally Crosby v. United States*, 506 U.S. 255 (1993), or when a defendant has unruly behavior, *see United States v. Washington*, 705 F.2d 489, 497 n.4 (D.C. Cir. 1983). *See also, e.g.*, *United States v. Gordon*, 829 F.2d 119, 125 n.7 (D.C. Cir. 1987) (collecting cases wherein a defendant "waives" his right to presence by "voluntarily absenting himself at trial," such as when a defendant flees or escapes from custody during the proceedings); *United States v. Khariton*, No. 2:21-cr-018, 2023 WL 3977695 (S.D. Ga. June 13, 2023); *United States v. Walker*, No. 15-2846, 2016 WL 9776580, at *10-11 (D.N.M. Oct. 6, 2016) (Advisory Committee has made clear that the waiver rule was "intended, not to allow a defendant to execute an express waiver of presence, but instead to allow sentencing in absentia when a defendant voluntarily flees before sentencing.").

Moreover, the defendant is not the only party with an interest in his appearing in person for all stages of the trial – the government and the public at large, too, have an interest in in-person proceedings. The D.C. Circuit has explained, in the context of sentencing, that although a defendant's right to be present in the courtroom at every stage of his trial is one of the "most basic of the rights guaranteed by the [Sixth Amendment's] Confrontation Clause," the government also has "an independent interest in requiring a public sentencing in order to assure the appearance of justice and to provide a ceremonial ritual at which society pronounces its judgment." *United States v. Lastra*, 973 F.2d 952, 955 (D.C. Cir. 1992) (citations omitted). The same rationale applies to verdicts.

Requiring "the defendant to be physically present" at key hearings, such as verdicts, underscores the need "to both reflect the seriousness of the offense and promote respect for the law[.]" *See United States v. Rossman*, 22-CR-280 (BAH), October 14, 2022 Minute Order. This is especially true in the context of the attack on the Capitol, "given the seriousness of the underlying offense conduct, in which defendant traveled to this district and participated in breaching the secure perimeter of… the U.S. Capitol Building on January 6, 2021, thereby disrupting the official proceeding underway of certification of the 2020 presidential election[.]" *Id.* The charges to be determined in this case are among the most serious, involving the defendant's assault on a police officer victim during one of the most violent confrontations that occurred at the U.S. Capitol on January 6, 2021: the battle between rioters and police at the mouth of the Lower West Terrace tunnel. To comply with Rule 43 and to reflect the seriousness of the defendant's conduct on January 6, the Court should require the defendant to be physically present when the verdict on the final count of 18 U.S.C. § 111(a) is delivered.

**Conclusion**

For the foregoing reasons, the Court convict Philip Crawford on both prongs of the lesser felony of 18 U.S.C. § 111(a) charged in Count Six at an in-person hearing with the defendant present.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ Mindy Deranek
MINDY DERANEK
Assistant United States Attorney
WA Bar No. 43085
601 D. Street, NW
Washington, DC 20530
(202) 252-7776
Mindy.Deranek@usdoj.gov

/s/ Adam Dreher
ADAM DREHER
Michigan Bar No. P79246
Assistant United States Attorney
601 D. Street, NW
Washington, DC 20530
(202) 252-1706
Adam.Dreher@usdoj.gov